**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

RICKY ALSTON,                                    *

      Petitioner                              *

v.                                               *          Civil Action No. JKB-17-1339

TIMOTHY S. STEWART, *Warden*, et al.,            *

      Respondents                          *
                           ***

<u>**MEMORANDUM OPINION**</u>

Petitioner, an inmate at the Federal Correctional Institution at Cumberland (FCI Cumberland), has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 in which he challenges the U.S. Parole Commission's (USPC) revocation of his supervised release and imposition of a 49-month term of imprisonment. ECF No. 1. Petitioner subsequently amended his Petition by naming various employees of the USPC as Respondents. ECF No. 7. The Respondents have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, ECF No. 15, and Petitioner has filed a Response in Opposition, ECF No. 17. Petitioner has also filed a Motion to Compel, seeking an evidentiary hearing on his Petition and the appointment of counsel. ECF No. 22. The matter is now ripe for review. After review of these filings, the Court finds no need for an evidentiary hearing. *See* Rules 1(b), 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6. For the reasons that follow, the Court shall grant Respondents' dispositive Motion, deny Petitioner's Motion to Compel, and dismiss this action.

## BACKGROUND

On August 25, 2006, in the Superior Court for the District of Columbia, Petitioner pled guilty to attempted distribution of cocaine, in violation of the D.C. Code. ECF No. 15-2 at 9.[1] Petitioner was sentenced to 18 months' imprisonment, followed by 5 years' supervised release. However, the term of imprisonment was suspended in lieu of probation. *Id.* On January 5, 2007, Petitioner's probation was revoked and he was sentenced to 18 months' imprisonment followed by 5 years' supervised release. *Id.* He was released on May 16, 2008, and commenced his term of supervised release. *Id.* at 9, 12. At some point, Petitioner moved to New York and, on October 12, 2008, he was placed under the supervision of the U.S. Probation Office for the Southern District of New York. *Id.* at 15.

After Petitioner "incurred several new arrests, tested positive for the use of controlled substances and failed to participate in drug treatment," he was arrested on December 28, 2011, for violating the terms of his supervised release. *Id.* at 4, 15. In June 2012, Petitioner's supervised release was formally revoked and he was sentenced to 11 months' imprisonment and 49 months' supervised release. *Id.* Petitioner was released from prison on November 27, 2012,[2] and commenced his 49-month term of supervised release. *Id.* at 15.

On June 25, 2014, Petitioner was arrested by the New York Police Department. *Id.* at 16, 18. As reported in the probation officer's request for a parole violator warrant, the arrest report stated:

> Alston entered Wolfgang's Steakhouse . . . and attempted to use the restroom. When he was denied access to the restroom, Alston allegedly pull[ed] out a knife and broke a flower vase. NYPD officer[s] responded to the scene where they

---

[1] Page numbers for Respondents' consolidated exhibits refer to the page when viewing ECF No. 15-2 as a PDF file, not the pages as numbered by Respondents.

[2] Although the 11-month term was imposed in June 2012, Petitioner had been incarcerated since his December 28, 2011 arrest, and therefore served the full 11 months. *Id.* at 5.

recovered a pink handle gravity knife from the location of the incident. The officers also reviewed a videotape of the incident and then placed him under arrest. The officers then searched him and recovered a red multi-function utility knife from his person.

*Id.*; *see id.* at 18 (arrest report).

On July 15, 2014, prior to Petitioner's state trial, Petitioner's probation officer requested the issuance of a parole violator warrant. *Id.* at 14-17. The request stated that Petitioner had violated the terms of his supervised release based on Petitioner's above-detailed arrest, admitted use of cocaine on multiple occasions, failure to report to multiple random drug tests, and failure to meet with his probation officer as scheduled. *Id.* at 14-15. The warrant issued December 22, 2014; however, because Petitioner was in the custody of the state of New York, the warrant was not executed when issued and a detainer was placed on Petitioner. *Id.* at 32-33.

On August 12, 2015, Petitioner was convicted by a jury of criminal possession of a weapon in the third degree, criminal mischief with intent to damage property, and menacing with a weapon in the second degree. *Id.* at 34, 56-57. Respondents report that a charge of assault with a deadly weapon was dismissed, *id.* at 34, but Petitioner has stated that he was never charged with that offense, *id.* at 56. Petitioner was sentenced to two to four years' imprisonment on the possession charge, and six months' imprisonment on each of the other charges. *Id.* at 34. On June 23, 2016, Petitioner was released from state custody and the U.S. Marshal executed the arrest warrant for the supervised release violation. ECF No. 1-4 at 5; ECF No. 15-2 at 35. Although in the legal custody of the United States, Petitioner was temporarily housed at the Oneida County Jail in New York State before being transferred to the Metropolitan Detention Center in Brooklyn and subsequently the Federal Detention Center in Philadelphia, both federal facilities. ECF No. 1-2 at 11 (reporting that Petitioner was moved to MDC Brooklyn on July 11,

2016); ECF No. 15-2 at 41 (indicating that Petitioner was housed at FDC Philadelphia no later than October 24, 2016).

In an August 29, 2016, report, a case analyst with the USPC determined that there was probable cause to find that Petitioner had violated his supervised release and recommended Petitioner's continued detention. ECF No. 15-2 at 36-38. In a September 7, 2016, letter to Petitioner, the USPC advised Petitioner that it had found probable cause to believe he had violated his supervised release and that the USPC would conduct a hearing to determine whether his supervised release should be revoked. *Id.* at 39-40.[3] The letter informed Petitioner:

> The specific charge(s) upon which these finding(s) are based:
>
> **Charge No. 3 - Law Violation. A) Criminal Possession of a Weapon 3rd Degree (Conviction)**
> **C) Criminal Mischief: Intent to Damage Property (Conviction)**
> **D) Menacing -2ND: Weapon (Conviction)**
>
> These charges and any additional information will be reviewed at the hearing for possible violations. The evidence relied on is indicated on the warrant application and/or in the summary report of the preliminary interview.
>
> Other charges as listed on the warrant application/supplement will also be considered at the time of your hearing.
>
> **Charge No. 1 - Failure to Submit to Drug Testing**
>
> **Charge No. 2 - Failure to Report to Supervising Officer as Directed**
>
> **Charge No. 3 - Law Violation. B) Assault With a Deadly Weapon - Knife**

*Id.* at 39. The Probation Officer's request for a parole violator warrant, the warrant application, and other documents pertaining to the revocation were also mailed with the letter. *Id.* at 40.

---

[3] Petitioner states that he did not receive this letter, ECF No. 1 at 9, although this is belied by the fact that Petitioner attached a copy of the letter and its enclosures to his Petition, ECF No. 1-2. It is possible that Petitioner means that he did not receive the letter around the time that it was sent, although he later received a copy of it.

Petitioner's revocation hearing was scheduled for October 24, 2016, but was continued at the request of Petitioner and his counsel. ECF No. 15-2 at 41.[4] Petitioner's initial hearing was conducted on November 30, 2016. The hearing examiner recommended finding that Petitioner committed violations 1, 2, 3(A), 3(C), and 3(D) as set forth in the September 7, 2016, letter (i.e., failure to submit to drug testing, failure to report to supervising officer as directed, criminal possession of a weapon in the third degree, criminal mischief: intent to damage property, and menacing with a weapon in the second degree). *Id.* at 42. The examiner recommended no finding of a violation as to charge 3(B), law violation of assault with a deadly weapon. *Id.* The examiner assigned the committed violations a severity rating of Category 1 and found that Petitioner had a salient factor score of 2, which yielded a Guidelines range of 12 to 16 months' imprisonment. *Id.* at 43. The examiner recommended a departure from the Guidelines range, stating "you have already served a term above the guidelines prior to the hearing (as a consequence of your new state sentence). And additional time is needed for release planning." *Id.* Accordingly, the examiner recommended that Petitioner serve 32 months' imprisonment, less time already served.[5] *Id.* at 56; *see also* ECF No. 15-1 at 5.

Under 28 C.F.R. § 2.216(h), a second examiner is required to concur in the recommendation before the recommendation is submitted to the USPC for a decision. On December 12, 2016, a second examiner reviewed and disagreed with the initial recommendation's determination that the violations corresponded with a severity rating of Category 1. ECF No. 15-2 at 46-47. The second examiner explained that the violation 3(D), the

<hr>

[4] Petitioner alleges that he did not request or consent to a postponement, ECF No. 1 at 12, but this is plainly contradicted by the signed request for a continuance, ECF No. 15-2 at 41.

[5] The record does not specify to what period of time the "time already served" refers, and there are several possibilities. However, Petitioner's appeal to the National Appeals Board suggests that the pertinent time period started upon his July 25, 2014, arrest and detention on state charges and continued uninterrupted to the hearing date. ECF No. 15-2 at 56 (stating that, as of the November 2016 revocation hearing, "Mr. Alston had served approximately 28 months, over two years, in prison for the violation conduct").

New York conviction for second degree menacing, was "most like Assault under the USPC guidelines." *Id.* at 46.[6] Because this USPC assault-like offense was committed with a knife, the second examiner stated that "the proper severity rating is Category Five, Assault with a Dangerous Weapon." *Id.* With Petitioner's salient factor score of 2, this yielded a Guidelines sentence of 60 to 72 months' imprisonment. *Id.* Because Petitioner's second term of supervised release, imposed in June 2012 following his initial revocation, was 49 months, the maximum sentence he was eligible to receive on the second revocation was 49 months. *Id.* The second examiner recommended that Petitioner receive this maximum sanction with no further term of supervised release. *Id.* at 46-47. She explained that, because Petitioner was "credited with 24 months before the USPC warrant was executed on 6-23-2016," the effect of this recommended maximum term was that Petitioner would "serve a new term of 25 months incarceration" from the date of the warrant's execution. *Id.*

A third examiner concurred with the second examiner's recommendation that the appropriate severity rating was a Category Five. *Id.* at 47. In support of this determination, the third examiner explained that

> The Commission intended that conduct involving assault with a weapon be rated at the Category Five level only when the offender's use of a weapon places a victim in "imminent danger of bodily injury." (See page 41 USPC Rules and Procedures Manual). The New York statute indicates that a defendant is guilty of Menacing 2nd Degree if he intentionally places or attempts to place another person in reasonable fear of physical injury by displaying a deadly weapon or dangerous instrument. In this case, Alston pointed a knife at two restaurant employees when confronted in person about his use of the restroom. I find that pointing a knife at two individuals constitutes conduct that places the victims in "imminent danger" and that the offense should be rated in accordance with the assault with a dangerous weapon guideline.

*Id.*

---

[6] The second examiner did not disagree with, or comment about, the first examiner's finding that charge 3(B), law violation of assault with a deadly weapon, was not supported. However, this is not inconsistent with the second examiner's finding that the menacing conviction was akin to the *USPC's* definition of assault, given that charge 3(B) concerned whether Petitioner committed a violation of *New York's* assault with a deadly weapon statute.

The recommendation was referred to the USPC, which found that Petitioner had committed charged violations 1, 2, 3(A), 3(C), and (D), and made no finding as to charged violation 3(B). *Id.* at 48. The USPC imposed the sentence articulated by the second examiner of 49 months' total imprisonment, comprising a new term of 25 months' imprisonment from the execution of the arrest warrant and credit for the 24 months' imprisonment he served while incarcerated on state charges. *Id.* The USPC provided the following statement of reasons for its decision:

> Your supervised release violation behavior has been rated as Category Five severity because it involved Menacing with a Weapon (which is most like Assault with a Weapon) and administrative violations. Your new Salient Factor Score is 2.[7] . . . Your guidelines established by the Commission indicate a customary range of 60-72 months to be served before release. After review of all relevant factors and information presented, a decision below the guidelines is warranted because a decision below the guidelines is required because the maximum authorized term of imprisonment limits the time you will serve to less than the bottom of the guideline range. A decision further below the guideline range is not found warranted.

*Id.* at 49.

After receiving an extension of time, Petitioner filed an appeal of the USPC's decision with the National Appeals Board (NAB) on December 19, 2016. *Id.* at 51-60. Petitioner's appeal presented only one ground: that the USPC erred in rating the severity level as a Category 5 because the commission incorrectly ruled that his violation was like an assault with a deadly weapon, thereby causing an error in the computation of the sentence guidelines. *Id.* at 54, 56-60. Petitioner asked that the first examiner's recommendation of 32 months' imprisonment be imposed instead. On June 23, 2017, after Petitioner filed the instant § 2241 action, the NAB rejected Petitioner's argument and affirmed the USPC's decision. *Id.* at 61.

---

[7] The USPC attached a sheet explaining the computation of Petitioner's salient factor score. *Id.* at 50. Because Petitioner does not challenge this computation, the Court finds it unnecessary to discuss it.

# ISSUES PRESENTED

Petitioner filed this habeas action on May 15, 2017. ECF No. 1. As numbered in the

Petition, Petitioner presents the following grounds for habeas relief:

1. After executing the arrest warrant on June 23, 2016, the U.S. Marshal failed to return Petitioner "to the custody of the Attorney General" for 18 days, and neither "the warrant application or other notices were" delivered to Petitioner. *Id.* at 8.[8]

2. Petitioner's due process protections were violated because he did not receive the September 7, 2016, revocation hearing disclosure and 28 CFR § 2.55(a) requires notice at least 60 days prior to hearing. *Id.* at 9.

3. "Pursuant to § 2.215(a) (c), (d)(1)(ii), (f) [Petitioner] was not permitted an opportunity to sign or date any paperwork related to this action, no paper was produced by U.S.M.S." Petitioner also appears to take issue with his placement in the Oneida County Sheriff's Department immediately after arrest and his transfer to MDC Brooklyn on "A-HOLD status with no other information." *Id.* at 10.

4. Petitioner was not advised of his right to counsel to challenge the placement of a warrant as a detainer while he was serving his state sentence pursuant to 28 CFR § 2.46 – 2.48, and the September 7, 2016, letter does "not contain the regional commissioner review that should have taken place between the months of April/May 2016." *Id.* at 10-11.

5. Petitioner "was unable to contest any action" pursuant to the provisions of 28 CFR § 2.215 prior to the hearing because he did not receive the requisite notice from the USPC. *Id.* at 11.

6. This ground is missing from the original Petition, although Petitioner presents the ground in his Response in Opposition to the Motion to Dismiss. Petitioner argues that the USPC failed to respond to his Freedom of Information Act request for "all relevant information into this matter." ECF No. 17 at 8-9.

7. The revocation hearing was conducted outside the time period provided by federal regulations, and "[n]o postponement were [sic] requested by [Petitioner] without [sic] the aid of counsel nor were the commission given consent to any postponement." ECF No. 1 at 12.

8. Petitioner submitted a notice of reconsideration to the USPC under 28 CFR § 2.27, but the Commission failed to respond. *Id.*

---

[8] Page numbers for the Petition exhibits refer to the page when viewing ECF No. 1 as a PDF file, not the pages as numbered by Petitioner.

9. The USPC erred in finding that Petitioner's severity rating was Category 5 because it incorrectly found that his menacing conviction was akin to an assault. *Id.* at 13-16. Petitioner's argument for this ground is taken substantially verbatim from portions of his argument to the NAB. *Compare id. with* ECF No. 15-2 at 56-59.

10. The USPC failed to provide a specific explanation "for the change in reasoning in the severity rating category." ECF No. 1 at 17.

11. "The Commission abused its discretion when it choose [sic] to go outside and above the guidelines by failing to adequately explaining [sic] its reason given in the Notice of Action." *Id.* at 18.

12. By finding that petitioner's offense was most like an assault with a deadly weapon, the USPC used the unadjudicated New York offense assault with a deadly weapon (i.e., charge 3(B) from the notice of revocation hearing). *Id.* at 19.

13. The NAB failed to render a decision on Petitioner's appeal and its time for doing so has expired. *Id.* at 20.

Respondents have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, arguing that Grounds 1 through 7 should be dismissed for failing to exhaust administrative remedies, Grounds 8 and 13 should be dismissed as moot because the NAB has issued its decision on Petitioner's appeal, and Grounds 9 through 12 should be dismissed as not reviewable by this Court or as supported by some evidence. ECF No. 15-1 at 7-20. Petitioner filed a Response in opposition. ECF No. 17.

## STANDARD OF REVIEW

Respondents' Motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56. ECF No. 15. The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the Plaintiff's complaint. *See Edwards v. Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The Supreme Court articulated the proper framework for analysis:

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on other grounds). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.*; *Sanjuan v. American Board of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235 236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g.*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, n.1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327(1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (a well pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnotes omitted).

This standard does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Id.* at 561. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 562. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cty Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusional factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). Further, complaints filed by a pro se litigant are liberally construed to allow the development of a potentially meritorious case. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e).

## ANALYSIS

### A. Preliminary Matters

1. <u>Appropriate Petition</u>

Petitioner filed this habeas corpus action under 28 U.S.C. § 2241. To be entitled to relief under § 2241, Petitioner must demonstrate that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." § 2241(c)(1). Although habeas corpus actions are more frequently brought under 28 U.S.C. § 2254 or 28 U.S.C. § 2255, the Court finds that Petitioner correctly brought this claim under § 2241. Numerous courts have treated § 2241 as the

appropriate vehicle for individuals who, like Petitioner, are D.C. Code offenders challenging the decision of the USPC to revoke their supervised release or parole. *See, e.g.*, *United States v. Kennedy*, 851 F.2d 689, 690 (3d Cir. 1988) ("A challenge to the Parole Commission's execution of a sentence is properly raised in a habeas corpus petition under 28 U.S.C.A. § 2241."); *Rahim v. U.S. Parole Comm'n*, 77 F. Supp. 3d 140, 143 (D.D.C. 2015); *Taylor v. Hollingsworth*, Civ. No. DKC-07-970, 2007 WL 5614097, at *1 (D. Md. Oct. 29, 2007), *aff'd*, 280 F. App'x 294 (4th Cir. 2008). Accordingly, this action will proceed as a § 2241 petition, as filed.

## 2. Appropriate Respondents

The initial Petition named Warden Timothy Stewart as the sole Respondent. ECF No. 1 at 1. Petitioner subsequently amended the Petition to add as Respondents Stephen J. Husk, Lynne Jenkins, Tasha D. Jones, Darrell V. Donmore, and an Unnamed Commissioner of the USPC. ECF No. 7.

"[T]he proper respondent to a habeas petition is 'the person who has custody over the petitioner.'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242). Thus, the only proper Respondent in this § 2241 action is Timothy Stewart, the warden of FCI-Cumberland. The remaining Respondents, all of whom are associated with the USPC and were involved in the revocation proceedings, will be dismissed from this action.

## 3. Nature of Habeas Corpus Relief

The purpose of a writ of habeas corpus is to effect immediate or speedier removal from unlawful confinement. *See Prieser v. Rodriguez*, 411 U.S. 475, 484-88 (1973). Plaintiff does not request such relief. Instead, all of the relief that Petitioner seeks—such as "[i]mploring U.S. Congress to specifically add legislation" concerning District of Columbia offenders and ordering the "[a]ppointment of independent review board" to oversee the USPC—is beyond the scope of

habeas relief. ECF No. 1 at 21-22. However, because Petitioner is proceeding pro se, the Court will nonetheless evaluate whether any of Petitioner's claims allege a "violation of the Constitution or laws or treaties of the United States," § 2241(c)(1), meriting the unrequested relief of an immediate or speedier release.

**B. Exhaustion & Procedural Default (Grounds 1-7)**

Although § 2241 does not contain an exhaustion requirement, courts have typically required petitioners to exhaust their administrative remedies prior to filing for federal habeas relief under § 2241. *Timms v. Johns*, 627 F.3d 525, 530-31 (4th Cir. 2010); *Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 760 (3rd Cir. 1996) (citing cases). Reliance on the administrative exhaustion requirement provides for development of a factual record, allows the appropriate agency to apply its expertise, and permits agencies to grant requested relief, thereby conserving judicial resources. *Jones v. Bock*, 549 U.S. 199, 207 (2007); *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Where judicial intervention is required, it facilitates the court's review. *See Wright v. Warden, FCI–Cumberland*, Civ. No. RDB–10–671, 2010 WL 1258181, at *1 (D. Md. March 24, 2010). The exhaustion requirement may be excused, however, where compliance would be futile. *Id.*; *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010).

"[P]roper exhaustion of administrative remedies . . . means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (internal quotation marks omitted). A claim must be "fairly presented" at each step in the exhaustion process, which means that the claim must "be presented face-up and squarely. Oblique references which hint that a theory may be lurking in the woodwork will not suffice." *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000) (ellipses and internal quotation marks omitted). The fair presentation and proper exhaustion requirements must be

completed as to each claim that the petitioner seeks to present to the Federal Courts in a habeas petition. *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004).

The regulations concerning the USPC and the D.C. Supervised Releasees are set forth at 28 C.F.R. §§ 2.200—2.220. The regulations detail the procedure for revocation hearings at § 2.216, explaining that after a hearing examiner conducts the revocation hearing, he or she

> shall prepare a summary of the hearing that includes a description of the evidence against the releasee and the evidence submitted by the releasee in defense or mitigation of the charges, a summary of the arguments against revocation presented by the releasee, and the examiner's recommended decision. The hearing examiner's summary, together with the releasee's file (including any documentary evidence and letters submitted on behalf of the releasee), shall be given to another examiner for review. When two hearing examiners concur in a recommended disposition, that recommendation, together with the releasee's file and the hearing examiner's summary of the hearing, shall be submitted to the Commission for decision.

§ 2.216(h). After the examiners' recommendation is referred to the USPC, it has 21 days to determine whether a violation has occurred and, if so, to impose an appropriate punishment. § 2.217. The USPC's decisions "shall be made upon the vote of one Commissioner, except that a decision to override an examiner panel recommendation shall require the concurrence of two Commissioners." § 2.217(g). The regulations do not provide supervised releasees with the opportunity to challenge the examiner's recommendations before they are submitted to the USPC for final decision.

The regulations state that an individual may appeal a decision to "revoke supervised release, or impose a term of imprisonment or a new term of supervised release after revocation" by following 28 C.F.R. § 2.26, a regulation applicable to all individuals under the supervision of the USPC. 28 C.F.R. § 2.220(a), (d). Section 2.26 states that an appeal of an applicable USPC decision must be filed with the NAB "within 30 days from the date of entry of the decision . . . . The appeal must include an opening paragraph that briefly summarizes the grounds for the

14

appeal. The appellant shall then list each ground separately and concisely explain the reasons supporting each ground." § 2.26(a)(2). The regulation identifies seven grounds for appealing a decision of the USPC to the NAB including, as relevant to the instant appeal,

> (1) That the guidelines were incorrectly applied as to any or all of the following:
>     (i) Severity rating;
>     (ii) Salient factor score;
>     (iii) Time in custody;
>
> (2) That a decision outside the guidelines was not supported by the reasons or facts as stated;
>
> . . .
>
> (5) That the Commission did not follow correct procedure in deciding the case, and a different decision would have resulted if the error had not occurred.

§ 2.26(e). "The National Appeals Board shall act within sixty days of receipt of the appellant's papers, to affirm, modify, or reverse the decision. Decisions of the National Appeals Board shall be final." § 2.26(c). A petitioner has exhausted his administrative remedies after complying with the procedures set forth in § 2.26 for appealing to the NAB. *See Clifton v. Richards*, 17 F.3d 1433, 1994 WL 66024, at *1 (4th Cir. Mar. 2, 1994) (unpublished) (per curiam) (citing *Brown v. Smith*, 828 F.2d 1493, 1495 (10th Cir. 1987) (per curiam)); *Abdussamadi v. Stewart*, Civ. No. JKB-14-2105, 2015 WL 306666, at *3–4 (D. Md. Jan. 22, 2015), *aff'd*, 616 F. App'x 78 (4th Cir. 2015).

Where a habeas petitioner has failed to properly exhaust his claim, but it would be futile or impossible to do so now, the claim is considered procedurally defaulted. *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). If a procedural default has occurred, a federal court may not address the merits of a habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, *i.e.*, the conviction of

one who is actually innocent.  *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Breard*, 134 F.3d at 620.  "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim" in the appropriate forum.  *Breard*, 134 F.3d at 620.  Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice.  *See Schlup v. Delo*, 513 U.S. 298, 314 (1995).

In this case, Respondent argues that Petitioner failed to exhaust the USPC's administrative remedies as to the claims presented in Grounds 1-7 of the Petition.  ECF No. 15-1 at 7-8.  Respondent notes that the sole ground Petitioner presented to the NAB on appeal was that the USPC made an error in applying the guidelines because it rated the severity of Petitioner's violation incorrectly in determining it was most like an assault.  ECF No. 15-1 at 7-8; *see* ECF No. 15-2 at 53-60.  Petitioner has argued that he exhausted his administrative remedies because he "presented issue of due process to Metropolitan Detention Center Brooklyn and Federal Detention Center Philadelphia Staff," ECF No. 1 at 21, and because he, at his October 24, 2016, hearing,[9] he "made mention to the person that was conducting the hearing about the due process violations. . . . That action exhausting [sic] my limited remedies.  I advised members of the U.S.P.C. of errors.  I was simply rebuffed on the matter," ECF No. 17 at 2.  Neither of Petitioner's arguments is sufficient to demonstrate exhaustion.  Critically, Petitioner failed to raise Grounds 1-7 of the Petition in his appeal to the NAB, as required by 28 C.F.R. § 2.26.  Further, because the NAB has already resolved the appeal that Petitioner filed, it appears

---

[9] Petitioner's revocation hearing was originally scheduled for this day, but was continued at his request.  ECF No. 15-2 at 41.  It is possible that he mentioned this to the hearing officer before the hearing was continued or that he mentioned it at his actual revocation hearing on November 30, 2016.

that Petitioner is no longer able to exhaust his administrative remedies as to Grounds 1-7 because the regulations do not permit successive appeals to the NAB.[10]

As Petitioner has procedurally defaulted on Grounds 1-7, the Court considers whether he can demonstrate cause and prejudice to overcome the default. Petitioner argues that counsel filed his appeal with the NAB and that he "should not be held to her errors due to whatever the circumstances are that lead to her decision," which is ostensibly an attempted argument regarding the cause prong of the procedural default analysis. However, short of demonstrating constitutionally ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), an attorney's failure to raise a particular claim does not constitute cause to overcome procedural default. *Murray*, 477 U.S. at 492 ("Attorney error short of ineffective assistance of counsel does not constitute cause for a procedural default . . . . To the contrary, cause for a procedural default on appeal ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim."). Petitioner has failed to satisfy the *Strickland* standard as to this particular claim, and he has failed to suggest any other basis for finding cause and prejudice to overcome the procedural default. Further, he does not identify a fundamental miscarriage of justice. Accordingly, the Court rejects Grounds 1-7 of the Petition as unexhausted and procedurally defaulted.

## C. Delay in Rendering Decisions (Grounds 8 and 13)

In Ground 8 of his Petition, Petitioner claims that the USPC failed to issue a decision on his Petition for Reconsideration. ECF No. 1 at 12. Similarly, in Ground 13, Petitioner claims that the NAB failed to issue a decision on Petitioner's appeal of his 49-month revocation

---

[10] Although 28 C.F.R. § 2.28 identifies certain circumstances under which the USPC may reopen a case, all of these circumstances concern conduct occurring or the discovery of information after the original decision. Thus, Grounds 1-7 of the Petition, which assert various failings of the Marshal's Service and the USPC prior to the issuance of the NAB decision, do not constitute grounds for reopening the case.

sentence within the 60-day period prescribed by regulation. *Id.* at 20. Respondent claims that these grounds should be dismissed as moot because the NAB has since issued its decision. ECF No. 15-1 at 12-13.

The Court concludes that Ground 8 must be dismissed, though not for the reason articulated by the Respondent. Except for cases that a Regional Commissioner of the USPC designates an "original jurisdiction case," there is no reconsideration procedure by the USPC. 28 C.F.R. §§ 2.17, 2.26. The regulation under which Petitioner claims he submitted his reconsideration petition is titled "Petition for reconsideration *of original jurisdiction decisions*." 28 C.F.R. § 2.27 (emphasis added); *see* ECF No. 1 at 12. As Petitioner's case was not designated as an original jurisdiction case, the USPC had no legal obligation—regulatory or otherwise—to respond to his reconsideration petition. Accordingly, Ground 8 must be rejected.

Turning to Ground 13, Petitioner argues that the NAB failed to render a decision within the 60 days of receiving his papers, as required by 28 C.F.R. § 2.26(c). ECF No. 1 at 20. Petitioner states that his attorney electronically submitted his appeal to the NAB on March 3, 2017, and that, as of his drafting of the instant § 2241 petition on May 12, 2017, the NAB had not rendered a decision. ECF No. 2 at 20. Respondent argues that this claim is moot as the NAB has since issued its decision, ECF No. 15-1 at 13, and has attached a copy of the NAB's decision dated June 23, 2017, ECF No. 15-2 at 61-62. Petitioner responds that because he has not yet received the decision, the claim is not moot. ECF No. 17 at 6. As with Ground 8, the Court rejects this claim, although not for the reason advanced by Respondent.

The NAB's failure to render a decision within the time period articulated by regulation does not necessarily rise to the level of a due process violation meriting habeas relief. *Judd v. Baer*, 911 F.2d 571, 573 (11th Cir. 1990). Rather, for such a delay to implicate constitutional

protections, Petitioner must demonstrate that the delay was both unreasonable and that it prejudiced him. *Villarreal v. U.S. Parole Commission*, 985 F.2d 835, 838 (5th Cir. 1993) (evaluating 18 U.S.C. § 4215 (1982), a subsequently repealed statute that imposed the same 60-day time period on the NAB to render a decision as found in 28 C.F.R. § 2.26(c)); *Judd*, 911 F.2d at 573 (same).

Here, it is plain that Petitioner suffered no prejudice from the delay.[11]  Plaintiff initiated this action within two weeks of the date that the NAB's decision was due under 28 C.F.R. § 2.26(c)—and more than a month before the decision itself actually issued.  The delay did not hinder Plaintiff in turning to the next step in the legal process, as he took the same action at approximately the same period of time as the action he would have taken if he timely received the NAB's decision.  Moreover, with the benefit of hindsight, since the NAB affirmed the earlier decision, the delay did not increase the amount of time that Petitioner was incarcerated.  Thus, the Court concludes that petitioner is not entitled to habeas relief as to his claim that the NAB issued its decision outside the 60-day period allowed under 28 C.F.R. § 2.26(c).

The Court notes some concern that Petitioner reports that he has not yet received a copy of the NAB decision, which was apparently sent to Petitioner's former counsel on June 23, 2017. ECF No. 15-2 at 61-62.  Accordingly, the Court will instruct that the Clerk provide Petitioner with a copy of the NAB decision, which the Respondents submitted to this Court in their exhibits.

---

[11] A delay of roughly a month and a half is likely not unreasonable, but it is unnecessary for the Court to make such a determination since Petitioner clearly fails on the prejudice prong.  Although Petitioner states that he has not received the NAB decision, implying that the delay is ongoing rather than capped at a month and a half, the Court notes that 28 C.F.R. § 2.26(c) states that the NAB "shall act within sixty days of receipt of the appellant's papers," not that Petitioner will receive a decision on the NAB within 60 days.

**D. Severity Rating and Guidelines Computation (Grounds 9-12)**

Finally, in Grounds 9-12 of his Petition, Petitioner presents interrelated arguments concerning the USPC's determination that his release violation was akin to an assault, which prompted an increase in the violation's severity level from Category 1 to Category 5, and a corresponding increase in the guidelines imprisonment term from 12-16 months to 60-72 months. ECF No. 1 at 13-19. Respondent does not dispute that Petitioner exhausted these grounds by presenting them to the NAB on appeal (albeit, in one consolidated argument rather than Petitioner's four enumerated grounds). However, Respondent contends that the decision is unreviewable by this Court as a matter within the USPC's sole discretion or, alternatively, that its decision was supported by some evidence. ECF No. 15-1 at 13-20.

Judicial review of a decision by the USPC is limited. *See Brown v. Lundgren*, 528 F.2d 1054 (5th Cir.1976); *Billiteri v. United States Board of Parole*, 541 F.2d 938 (2d Cir. 1976). As long as the Commission observed due process requirements and acted within its statutory and regulatory authority, the courts "will not usurp the Commission's position as established in the statutory scheme enacted by Congress." *Stroud v. United States Parole Commission*, 668 F.2d 843, 846 (5th Cir.1982). The courts give "extreme deference" to the conclusions of the Parole Commission and "review[ ] them only to determine 'whether there is 'some evidence' in the record to support the Commission's decision." *Simpson v. Ortiz*, 995 F.2d 606, 608 (5th Cir. 1993) (quoting *Maddox v. United States Parole Commission*, 821 F.2d 997, 1000 (5th Cir. 1987)). "[A] court may review the action if there is a claim that the agency has violated constitutional, statutory, regulatory or other restrictions, but may not review agency action where the challenge is only to the decision itself." *Garcia v. Neagle*, 660 F.2d 983, 988 (4th Cir. 1981).

### 1. Ground 9

In Ground 9, Petitioner argues that the USPC erred because it "incorrectly rated the severity of [his] current violation conduct, by deeming the offense of conviction was sufficiently similar to assault with a dangerous weapon." ECF No. 1 at 13 (capitalization altered). In arguing that his severity rating was incorrect, however, Petitioner concedes that the challenged rating was supported by "some evidence"—namely, the USPC's determination that the conduct of menacing with a knife was akin to conduct rated at a Category 5 severity level. Because some evidence supports the application of a severity level of Category 5, Ground 9 is without merit.

As an aside, the Court notes that Petitioner's analysis in support of Ground 9 does not accurately report the USPC's decision. As he does on several other occasions in his filings to this Court, Petitioner compares the elements of the menacing conviction with the elements of the New York crime of assault with a deadly weapon in the first, second, and third degrees in an effort to demonstrate that the elements of menacing do not amount to assault. ECF No. 1 at 13-16. However, the USPC specifically made "no finding" as to whether Petitioner committed the New York offense of assault with a deadly weapon due to "insufficient evidence." ECF No. 15-2 at 48. Rather, the USPC stated that the menacing offense, with its requirement that an offender "places the victim in reasonable fear of bodily harm" is "most like Assault *under the USPC guidelines*." *Id.* at 46 (emphasis added).

### 2. Ground 10

Related to Ground 9, Petitioner argues in Ground 10 that the USPC's decision to increase his severity rating failed to comply with its own regulations that an increased severity rating be supported by a specific explanation. ECF No. 1 at 17. Unlike Ground 9, which challenged a conclusion of the USPC (its severity rating, which was supported by "some evidence"),

Ground 10 is a challenge to whether the USPC followed its own regulations, which is more appropriate for this Court's habeas review. *See Garcia*, 660 F.2d at 988 ("[A] court may review the action if there is a claim that the agency has violated constitutional, statutory, regulatory or other restrictions . . . .").

Petitioner's argument is slightly misdirected as he quotes from Section 2.20-05 of the USPC Rules and Procedures Manual, which is titled "Decisions Outside the Guidelines." *USPC Rules and Procedures Manual* at page 85, *available at* https://www.justice.gov/sites/default/files/uspc/legacy/2011/12/30/uspc-manual111507.pdf (document dated June 30, 2010). As explained in the discussion section for Ground 11, *infra*, a decision outside the guidelines is distinct from a determination regarding the severity rating, since the latter is merely a component in determining the former. In view of Petitioner's pro se status, however, the Court considers the more applicable section from the Manual, Section 2.20-04, which is titled "Offense Severity Rating." *USPC Rules and Procedures Manual* at page 84. This section states that "[t]he severity rating must be explained on the Notice of Action Worksheet (in the space provided) by a brief summary of the specific facts that justified the rating." *Id.*

Here, the adopted decision of the second and third hearing examiners gave the following explanation behind the severity rating of Category 5:

[Second Examiner:]

He was convicted in the State of New York of Criminal Possession of a Weapon, 3rd degree; Menacing, Weapon, 2nd degree and Criminal Mischief with Intent to Cause Property Damage. . . . The statute requires that the offender, by his/her actions, places the victim in reasonable fear of bodily harm. This is most like Assault under the USPC guidelines. In addition, since he committed this offense with a dangerous weapon, knife, I find that the proper severity rating is Category Five, Assault with a Dangerous Weapon.
. . .

[Third Examiner:]

I carefully considered the proper rating of the offense behavior. I definitely agree that the crime of Menacing 2nd Degree is most like an assault crime and thus the behavior should be rated, at a minimum, at the Category Two level. Ms. Jenkins[, the second examiner,] has rated the crime at the Category Five level because Mr. Alston used a knife in committing the offense.

After reviewing the statute and the Commission's own notes and procedures, I agree with Ms. Jenkins's assessment of the conduct as a Category Five· level ·assault. The Commission intended that conduct involving assault with a weapon be rated at the Category Five level only when the offender's use of a weapon places a victim in "imminent danger of bodily injury." (See page 41 USPC Rules and Procedures Manual). *The New York statute indicates that a defendant is guilty of Menacing 2nd Degree if he intentionally places or attempts to place another person in reasonable fear of physical injury by displaying a deadly weapon or dangerous instrument. In this case, Alston pointed a knife at two restaurant employees when confronted in person about his use of the restroom. I find that pointing a knife at two individuals constitutes conduct that places the victims in "imminent danger"* and that the offense should be rated in accordance with the assault with a dangerous weapon guideline.

ECF No. 15-2 at 46-47 (emphasis added).

These statements are more than adequate to satisfy the requirement of a "brief summary of the specific facts that justified" Petitioner's Category 5 severity rating, particularly the emphasized section of the third examiner's decision.

Although the above summaries did not appear on the Notice of Action worksheet, it is apparent that the Petitioner received these summaries *with* the Notice of Action worksheet, presumably as attachments or exhibits, as evidenced by the fact that Petitioner's appeal to the NAB challenging the severity rating quoted from these summaries and referred to the authorizing examiners by name. *See* ECF No. 15-2 at 56-57. Accordingly, the Court rejects Ground 10.

3. Ground 11

Ground 11 is facially meritless, as the claimed error is inconsistent with the facts of the case. Petitioner claims that the USPC was required to provide specific reasoning for sentencing

him "above the guidelines." ECF No. 1 at 18. Petitioner was not sentenced above the guidelines range; in fact, Petitioner's sentence of 49 months' imprisonment was below the guidelines range of 60 to 72 months' imprisonment. To the extent that Petitioner's intention was to challenge the reasoning behind the increased severity rating that yielded a different guideline range, it would be pointless to re-construe Ground 11 as making that argument, because Petitioner presents that argument in Ground 10.

4. Ground 12

Finally, as to Ground 12, Petitioner faults the USPS for using an unadjudicated offense in its revocation decision, and states that "[p]ursuant to [28 C.F.R.] § 2.102(b)[, he] was entitled to a local revocation hearing if the commission was going to consider an unadjudicated charge." ECF No. 1 at 19. The USPC is plainly allowed to consider "unadjudicated offenses," since the relevant question in revoking supervised release is whether the individual violated the terms of his release, which can be, but is not necessarily, accomplished by being convicted of another offense. Indeed, the second prong of Ground 12—that particular hearing procedures must occur when the USPC considers an unadjudicated charge—logically means that unadjudicated charges can serve as the basis for revocation. *See* 28 C.F.R. §§ 2.214(a), 2.215(a).

Petitioner's argument that he was entitled to a "local revocation hearing" under § 2.102(b) also fails. Section 2.102 and the rest of 28 C.F.R. Chapter I, Part 2, Subpart C apply to D.C. Code prisoners and parolees, not to individuals like Petitioner who are covered under Subpart D of the same Part. In any event, the regulation in Subpart D that mentions local revocation hearings states in relevant part:

> The releasee shall also be given a local revocation hearing if the releasee admits (or has been convicted of) one or more charged violations, but denies at least one unadjudicated charge that may be determinative of the Commission's decision regarding revocation or the length of any new term of imprisonment, *and the*

> *releasee requests the presence of one or more adverse witnesses regarding that contested charge.*

§ 2.215(b) (emphasis added). Petitioner does not allege, nor does the record suggest, he made such a request. As such, Petitioner has failed to establish that the USPC violated their own regulations or any other law, and he is therefore not entitled to relief on this claim.

## CONCLUSION

Accordingly, based upon the foregoing reasons, Respondents' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, ECF No. 15, will be granted. Habeas corpus relief shall be denied and the case will be dismissed with prejudice. In view of this disposition, the appointment of counsel and an evidentiary hearing are unnecessary. Therefore, Petitioner's self-styled Motion to Compel will also be denied. ECF No. 22. A certificate of appealability shall not issue and the Clerk shall be directed to close this case.

A separate order follows.

Dated this 26th day of February, 2018 .

FOR THE COURT:

_____/s/_____

James K. Bredar
Chief Judge